1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                    **SOUTHERN DISTRICT OF CALIFORNIA**

10  UNITED STATES OF AMERICA,                    CASE NO. 15cr0195 JM

11                               Plaintiff,      ORDER DENYING MOTION TO
                                                 DISCLOSE GRAND JURY
12        v.                                     TRANSCRIPTS; DENYING MOTION
                                                 TO COMPEL DISCLOSURE OF
13                                               CONFIDENTIAL IDENTITIES;
    JOSEPH H. BENTLEY; and                       DENYING MOTION TO SEVER;
14  EUGENE CIOE,                                 DENYING MOTION TO STRIKE
                                                 SURPLUSAGE
15                               Defendants.

16

17         Pursuant to Fed.R.Crim.P. 6(e)(3)(E)(ii) and Rule 16, Defendant Bentley moves

18  for disclosure of certain grand jury transcripts and for disclosure of the identifies of

19  potential witnesses, respectively.   Pursuant to Fed.R.Crim.P. 7(d) and Rule 8(b),

20  Defendant Eugene Cioe moves to strike surplusage from the indictment and to sever

21  counts in the Superseding Indictment ("SI"), respectively.  Defendants Bentley and

22  Cioe join in each other's motions.  Having carefully considered the matters presented,

23  the court record, appropriate legal authorities, and the arguments of counsel, the court

24  denies the motion for disclosure of grand jury transcripts, denies the motion to compel

25  disclosure of the identities of certain witnesses, denies the motion to sever counts, and

26  denies the motion to strike alleged surplusage from the SI.

27

28

### Background

The SI, filed on June 4, 2015, alleges counts for (1) conspiracy to defraud the United States (theft of public property; false and fictitious claims); (2) - (4) three counts of false, fictitious, and fraudulent claims in violation of 28 U.S.C. 287; (5) - (6) one count for theft of public property in violation of 18 U.S.C. §641; and (7) witness tampering in violation of 18 U.S.C. §1512(b)(1).  Only counts (1) - (4) are charged against Cioe.  Bentley is charged in all counts [Counts (5) and (6) relate to charges that Bentley converted roofing materials from the Navy],  including a forfeiture count.

Defendant Bentley, a former civilian employee at the Navy Facilities Command Southwest ("NAVFAC"), supervised crews that do roofing, welding, paving, fencing, and other construction projects on Navy bases.  Bentley also authorized purchases of materials from local suppliers, including co-defendant Cioe.  Cioe owned and operated a fencing business (initially Alcem Fence Co., Inc. and later, Cioe Fencing and Material Supply).  The central allegation is that Bentley and Cioe used Bentley's supervisory position to personally profit in a scheme to defraud the Navy.

The Government specifically identifies three transactions in its briefing: (1) Bentley is alleged to have removed a chain-link fence from a Navy base and delivered it to his home in Ocotillo, California.  A crew from Alcem and one NAVFAC employee installed the stolen fencing around Bentley's property.  Bentley then had the Navy pay to install a new fence to replace the stolen one.  (2)  In early 2013, Bentley allegedly used Navy funds to purchase materials for a roof on his deceased father's house, claiming the material would be used at Navy Base Coronado.  Bentley paid E.R., a NAVFAC employee who reported directly to Bentley, to install the roof using Navy materials.  Once a criminal investigation commenced, E.R. was interviewed. E.R. told Bentley about the investigation and Bentley allegedly asked E.R. to obstruct the investigation by making false statements to the agents.  (3)  In May 2014, Bentley was tasked to complete a fence project in a parking lot on Naval Base Coronado.  On May 14, 2014, Cioe sent Bentley an invoice to provide labor and materials in the

amount of $2,304 for the first phase of the core drilling project.   Bentley then authorized the funds and suggested "Cioe Material Sales" as the source.   Navy Fleet Supply then paid $2,304 to Cioe Fencing and another $2,460 for the second phase of the project.   Despite paying over $4,700 to complete the fence, there is allegedly no evidence that Cioe Fencing did any work in exchange for the payments.   Indeed, a NAVFAC employee allegedly completed the core drilling project.

The SI alleges that numerous  checks (about 40 to 50) were issued by Cioe to Bentley in various amounts from $76 to $8,800.   These amounts are identified as kickbacks allegedly received by Bentley.

**Bentley's Motion to Disclose Grand Jury Transcripts**

Defendant Bentley, joined by Cioe, seeks disclosure of the grand jury transcripts. He believes the grand jury was misled by the Government because (1) co-defendant Cioe did, in fact, install the disputed fencing; and (2) the Government did not introduce any evidence that Cioe overcharged the Navy.   Bentley explains that Cioe, pursuant to a grand jury subpoena, produced invoices and backup documents in the form of "Job Tickets" and "Cost Breakdown Sheets."   The Job Tickets identify the employees who performed the work and the Cost Breakdown Sheets report the total labor, materials, equipment, and profit on each job.   Bentley contends that the Government did not disclose this information to the grand jury.

Fed.R.Crim.P.  6(e)(3)(E)(ii) provides that the court may disclose grand jury transcripts to "a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury. . . ."   To obtain grand jury transcripts, a defendant must show a particularized need.   Defendant must show (1) disclosure is needed to avoid a possible injustice; (2) the need for disclosure is greater than the need for continued secrecy; and (3) the request for disclosure is structured to cover only the needed material.   United States v. Perez, 67 F.3d 1371, 1387 (9th Cir. 1995).   Defendant fails to meet the burden to show the requisite need.   The Government correctly notes that "the government has no obligation to disclose

1    substantial exculpatory evidence to a grand jury," <u>United States v. Bingham</u>, 653 F.3d

2    983, 999 (9th Cir. 2011), and "an indictment valid on its face is not subject to challenge

3    on the ground that the grand jury acted on the basis of inadequate or incompetent

4    evidence." <u>United States v. Calandra</u>, 414 U.S. 338, 345 (1974).

5         Defendant requests access to the grand jury transcripts to review the testimony

6    and documentary evidence presented to the grand jury for the "proposition that co-

7    defendant Cioe and his companies did not perform the disputed work." Specifically,

8    Defendant argues that evidence of the "Job Tickets" and "Cost Breakdown Sheets"

9    show that Cioe performed "the disputed work." Defendant does not identify which

10   "disputed work" he is referring to (or the reliability of the bare allegation). More

11   importantly, the SI identifies that Cioe did not perform the contracted work  (or was

12   overpaid for the work). To the extent the work was correctly performed, that is a

13   defense to the charges. Further, the Government represents that it has reviewed all 70

14   Job Tickets and Cost Breakdown Sheets and has determined that none correspond to

15   the May/June 2014 time period of the disputed work and, therefore, "could not possibly

16   establish that Cioe performed the disputed work." Finally, absent a further showing,

17   Defendant's theory, supported by unsubstantiated and speculative allegations, fails to

18   show that disclosure is needed to avoid a possible injustice. Defendant's arguments

19   fail to establish a particularized need.

20        In sum, the court denies the motion to disclose grand jury transcripts.

21   **Bentley's Motion to Compel Disclosure Identities**

22        Defendant Bentley, joined by Cioe, moves to compel the Government to disclose

23   redacted names (and contact telephone numbers) in materials provided to the defense.

24   Bentley represents that the Government has produced interview memoranda of its

25   witnesses in which certain names were redacted. As some of the witnesses apparently

26   observed fencing being removed being, Bentley desires to interview these witnesses.

27        The Government has generally responded that Defendants could easily access

28   all the named witnesses and that Defendants have an independent obligation of due

diligence.  The defense acknowledges that the Government has no duty to assist the defense with its investigation.  The issues surrounding witnesses' contact information have proven to be fluid with the Government continuing to provide information and the defense expanding the list of names.

During oral argument, the Government represented it will make further contact with any witness it intends to call at trial (whose names have already been provided to the defense) but for whom contact information has not been provided, as previously requested by these witnesses.  Counsel for the Government will inquire of these individuals whether they consent to meeting with defense counsel at the Office of the United States Attorney and will arrange for any such meetings with consenting individuals.  Counsel for the Government will also advise the defense of the names of witnesses who decline to meet with defense counsel.

Any remaining witness, for whom the Government refuses to provide contact information because the witness reasonably fears harassment and retribution by Bentley, or who simply wishes not to meet with defense counsel, the Government has no further obligation.  The Government notes that Bentley is charged with witness tampering and, therefore, a witness may have reasonable concerns about safety.

In sum, the court denies the motion without prejudice.

**Cioe's Motion to Sever Counts**

Cioe contends that the SI alleges two unrelated separate conspiracies and, therefore, must be severed pursuant to Fed.R.Crim.P. 8(b).  Cioe seeks to sever the so-called fencing related counts, counts (1) - (4) from the so-called roofing related counts, counts (5) - (6).  Rule 8(b) provides, in pertinent part:

> Two or more defendants may be charged in the same indictment or information if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses.  Such defendants may be charged in one or more counts together or separately and all of the defendants need not be charged in each count.

The court "may grant" severance  of joined offenses or defendants pursuant to

Rule 14 upon a showing of prejudice where justice so requires.  Defendant bears the heavy burden of "demonstrating clear, manifest, or undue prejudice" resulting from the joinder.  United States v. Sarkisian, 197 F.3d 966, 978 (9th Cir. 1999).  The test is whether joinder is so manifestly prejudicial that it outweighs the dominant concern with judicial economy and compels the exercise of the court's discretion to sever.  See United States v. Brashier, 548 F.2d 1315, 1323 (9th Cir. 1976).

Here, Defendants fail to establish clear prejudice.  The so-called fencing and roofing counts are logically related and allegedly had a common purpose of defrauding the Navy through Bentley's ability to request and authorize the purchase of materials, supplies, and labor from contractors.  Further, there is substantial overlap in evidence between all counts (i.e., the United States will present evidence regarding the NAVFAC organization, Bentley's role in the organization, his role as a supervisor, and the material requisition process).  Because the roofing and fencing allegations are part of the common plan or scheme to defraud the Government, the counts are properly joined.  Moreover, any prejudice can be minimized by providing a clear jury instruction that the evidence and counts must be considered separately against each defendant.  Zafiro v. United States, 506 U.S. 534, 540-41 (1993).

In sum, the motion to sever counts is denied.

**Cioe's Motion to Strike Surplusage**

Pursuant to Fed.R.Crim.P. 7(d), Cioe moves to strike surplusage from the SI.  Cioe contends that five of the 63 overt actions charged in the SI should be stricken from count 1 "to protect against prejudice or inflammatory allegations." (Motion at p.14:12).  The five challenged overt action allegations relate to allegations that Bentley signed a Materials Requisition Form authorizing the purchase of roofing materials and that Bentley hired E.R. to do the roofing work.  Cioe expresses concern that he could be tainted by the roofing allegations and notes that he is only charged in the fencing allegations.

As explained by the Government, a conspirator does not have to be aware of the

1    identity of every other conspiracy or of each act done by his co-conspirators.  See

2    United States v. Cunningham, 723 F.3de 217, 229 (2d Cir. 1983).  As the fencing and

3    roofing allegations are part of the alleged conspiracy to defraud the Navy (viewed

4    broadly), the allegations are neither prejudicial nor inflammatory.  In any event,

5    depending on the evidence presented at trial, a jury instruction, or admonition, may be

6    appropriate.  The motion is denied.

7            In sum, the court denies the motion for disclosure of grand jury transcripts,

8    denies the motion to compel disclosure of the identities of certain witnesses, denies the

9    motion to sever counts, and denies the motion to strike allegedly surplusage allegations

10   from the SI.

11           **IT IS SO ORDERED.**

12   DATED:  July 14, 2016

13                                                            _____

14                                                            Hon. Jeffrey T. Miller
                                                               United States District Judge

15   cc:            All parties

16

17

18

19

20

21

22

23

24

25

26

27

28

- 7 -